# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORISMEL CENTENO-ORTIZ,<br><br>                              Petitioner,<br>vs.<br><br>ROBERT CULLEY, Acting Field Office Director, United States Bureau of Immigration and Customs Enforcement (ICE); JOHN GARZON, Assistant Field Office Director, San Diego District, ICE; JOHN MORTON, Assistant Secretary, ICE; JANET NAPOLITANO, Secretary, Department of Homeland Security; and ERIC HOLDER, United States Attorney General,<br><br>                              Respondents. | CASE NO. 11-cv-1970 – IEG (POR)<br><br>ORDER:<br><br>(1) DENYING REQUEST TO DISMISS AS MOOT; and<br><br>(2) CONDITIONALLY GRANTING PETITION [Doc. No. 1]. |

Petitioner Glorismel Centeno-Ortiz filed a petition for writ of habeas corpus relief pursuant to 28 U.S.C. § 2241 ("Petition"), seeking release from the Department of Homeland Security ("DHS")'s custody and a declaration that his prolonged detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. In response to the Court's Order to Show Cause, Respondents filed a return to the Petition, contending that the Petition should be dismissed as moot because Petitioner was already released on parole. Petitioner filed a traverse. For the reasons set forth below, the Court **DENIES** the request to dismiss the Petition as moot and **CONDITIONALLY GRANTS** the Petition.

# BACKGROUND

## I. Factual background

Petitioner is a native and citizen of El Salvador. In 1991, his mother brought him and the rest of her family to the United States illegally, seeking to escape the violence in El Salvador. In 1994, Petitioner's mother petitioned for asylum for him as a derivative beneficiary. Pending adjudication of the asylum petition, Petitioner applied for and received work authorization in 1995. At the same time, Petitioner became entangled in a gang life and, in 1998, was convicted of a second degree burglary. On June 30, 1999, Petitioner was served with a Notice to Appear and placed in removal proceedings based on his criminal conviction. The Immigration Judge ("IJ") before whom Petitioner appeared failed to inform him that his derivative beneficiary asylum application was pending and that he could personally apply for asylum or relief under the Convention Against Torture ("CAT"). Petitioner was subsequently removed to El Salvador.

Fearing for his safety in El Salvador, Petitioner immediately returned to the United States. Once back in the United States, Petitioner dedicated himself to keeping youth around Los Angeles out of gangs and maintained steady employment to support his family, including his United States citizen son. He was re-detained on May 15, 2007, after he left the country for a few hours to enjoy a night out in Tijuana with friends. He was arrested as he sought to return to the United States and was charged with criminal illegal reentry after deportation. On September 24, 2008, this Court dismissed the criminal charges against Petitioner, finding that the IJ had violated his due process rights during the 1999 deportation proceedings by failing to inform him of his pending derivative asylum application and of his opportunity to apply for asylum and CAT relief. *See United States v. Centeno*, No. 07-cr-2442 (JAH), Doc. No. 24 (S.D. Cal. Sept. 24, 2008).

Despite the dismissal of the criminal charges against him, Petitioner spent sixteen months in criminal custody. Subsequently, on October 2, 2008, DHS took Petitioner into its custody and instituted removal proceedings against him. DHS charged Petitioner as removable for: (1) having been convicted of an "aggravated felony" with a previous removal order; (2) falsely representing himself to be a United States citizen (a charge that was subsequently dismissed); and (3) not being in possession of a valid entry document. On July 7, 2009, the IJ found Petitioner removable and

1 denied his application for asylum and withholding of removal under CAT.  On October 30, 2009,
2 the Board of Immigration Appeals ("BIA") affirmed.  On November 30, 2009, Petitioner sought
3 Ninth Circuit review of the removal order.  On April 22, 2010, while his petition for review was
4 still pending, the BIA reopened Petitioner's case and remanded to the IJ for reconsideration of
5 whether conditions in El Salvador justified withholding of removal under CAT.  On remand, the IJ
6 again denied Petitioner's claim for CAT relief, and, on January 14, 2011, the BIA again affirmed.
7 On January 24, 2011, Petitioner submitted a second petition to the Ninth Circuit.

8      At the same time as he was seeking Ninth Circuit review, Petitioner also sought to reopen
9 his 1999 deportation proceedings—the ones this Court found to violate due process.  On July 5,
10 2011, the BIA reopened and remanded the proceedings to the IJ for rehearing.  On July 6, 2011,
11 and August 10, 2011, upon Government's motion, the Ninth Circuit dismissed both of Petitioner's
12 petitions for review with a citation to *Lopez-Ruiz v. Ashcroft*, 298 F.3d 886, 887 (9th Cir. 2002)
13 (court only has jurisdiction to review final orders of removal).  (*See Centeno v. Holder*, Case Nos.
14 09-73801 & 11-70251 (9th Cir.).)  On October 6, 2011, the Ninth Circuit denied Petitioner's
15 motion for reconsideration of the dismissal of his second petition for review.

16      Throughout this whole time, Petitioner was held in the DHS custody.  In a Post Order
17 Custody Review ("POCR") dated April 12, 2011, the Immigration and Customs Enforcement
18 ("ICE") officials determined that Petitioner had to remain in the ICE custody pending his removal
19 because he was a "flight risk" and because the "seriousness" of his 1998 second degree burglary
20 conviction made him a "threat to the community."  (Petition, Ex. E.)  Three months earlier,
21 however, when Petitioner requested supervised release, the ICE officials responded that he was
22 subject to "mandatory custody."  (*Id.*, Ex. F.)

23      Petitioner's attempts to obtain a bond hearing before an IJ have been unsuccessful.  On
24 March 24, 2010, an IJ concluded that he lacked jurisdiction to determine whether Petitioner's
25 detention was justified because Petitioner was an "arriving alien."  The BIA affirmed.  The BIA
26 concluded that because Petitioner was an "arriving alien," the Ninth Circuit's recent decisions in
27 *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), and *Prieto-*
28 *Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), did not apply, and therefore Petitioner was not

entitled to a bond hearing before an IJ. (Petition, Ex. G.) On May 4, 2011, a different IJ again denied Petitioner's request for a bond hearing, stating that he was without jurisdiction to release Petitioner from custody. (*Id.*, Ex. H.) On September 13, 2011, the BIA affirmed, holding that "[t]he current regulations governing the detention and release of aliens preclude an Immigration Judge from redetermining the custody status of arriving aliens in removal proceedings." (Gov't Return, Ex. E (citing 8 C.F.R. § 1003.19(h)(2)(i)(B)) [Doc. No. 10-2].) The BIA further held that where the DHS designated an alien as an "arriving alien," "the Immigration Judge is precluded from undertaking a determination as to the propriety of the DHS's designation." (*Id.* (citing 8 C.F.R. § 1003.19(h)(2)(ii) and *Matter of Oseiwusu*, 22 I. & N. Dec. 19 (BIA 1998)).)

## II.     Procedural background

Petitioner filed the present Petition on August 26, 2011, raising two legal claims. First, Petitioner seeks a determination that the immigration laws do not authorize his continued detention unless he is provided with a bond hearing before an immigration judge with the power to order his release should the Government fail to prove by clear and convincing evidence that he is either a flight risk or a danger to the community. In the alternative, Petitioner seeks a determination that any immigration law purporting to authorize his continued detention without a bond hearing violates due process. As part of his request for relief, Petitioner ask the Court to "[g]rant the writ of habeas corpus and order Petitioner's immediate release from custody under reasonable conditions of supervision; or in the alternative, order a constitutionally adequate hearing before an immigration judge, at which the immigration judge must release Petitioner unless Defendant-Respondents prove by clear and convincing evidence that Petitioner's continued detention remains justified and that release on bond or other reasonable conditions would not be appropriate." (Petition, at 14.) Petitioner also asks the Court to declare that the Government's three-year-long detention of Petitioner, as well as its failure to provide him with a custody and bond hearing, violates the INA and the Due Process Clause of the Fifth Amendment. (*Id.*)

Upon the Court's issuance of an Order to Show Cause, Respondent filed a Return to the Petition, arguing that the Petition should be dismissed as moot because Petitioner has since been released from custody and is currently on parole. [Doc No. 10.] Petitioner subsequently filed a

Traverse, contending that the Petition is not moot.  [Doc. No. 11.]

**DISCUSSION**

**I.    Mootness**

The Government argues the Petition should be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(b)(1) because Petitioner was released on parole on September 28, 2011, and, therefore, there is nothing left to be addressed by the granting of the habeas relief.  According to the Government, Petitioner's release on parole granted him the only relief to which he was entitled.  Moreover, according to the Government, the Court lacks jurisdiction to review the conditions of Petitioner's release on parole.  *See* 8 U.S.C. § 1182(d)(5)(A).

A.    Legal standard

It is axiomatic that federal courts are courts of limited jurisdiction, and as such "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  Therefore, the Court must presume that a case lies outside of its limited jurisdiction, and the burden of establishing jurisdiction is on the party asserting it.  *Id.*  However, once jurisdiction is established, the presumption disappears and the "heavy burden" shifts to the party alleging that a case must be dismissed on the account of mootness.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189-92 (2000).

For the matter to remain justiciable, "a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'"  *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quotation omitted).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotation omitted).  A court must dismiss the case as moot if at any point it becomes certain either that "'the allegedly wrongful behavior could not reasonably be expected to recur,'" *Laidlaw*, 528 U.S. at 189 (citation omitted), or that there is no effective relief remaining for the court to provide, *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam).

///

B.   The Petition is not moot

The Court agrees with Petitioner that his Petition is not moot. *First*, despite his release, Petitioner continues to have a personal stake in the habeas petition. He was classified as an "arriving alien" and was released pursuant to 8 U.S.C. § 1182(d)(5), which provides that "[t]he Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Thus, Petitioner's release is discretionary and can be revoked at any time when, "in the opinion of the Attorney General, [its purpose has] been served." *See id.*; *see also* 8 C.F.R. § 212.5(e).

Petitioner's discretionary release from custody, therefore, places him in a position analogous to the petitioners challenging their prolonged detentions in *Clark v. Martinez* and *Rodriguez v. Hayes*, who were released from detention pursuant to discretionary parole provisions while their suits were ongoing. *See Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (petitioner's case was not moot, despite his release, because the release was limited to one year and was subject to the Secretary of Homeland Security's discretionary authority to terminate); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117-18 (9th Cir. 2010) (petitioner's case was not moot, despite his release, because the release was subject to a number of restrictive conditions and was subject to revocation at government's discretion without any hearing). Just like in *Clark* and *Rodriguez*, if Petitioner is successful in his Petition, then instead of discretionary release, he would be entitled to a hearing before an immigration judge where "the government would need to meet its burden [of showing that he is a sufficient danger or flight risk] or offer him a nondiscretionary release until such time as it can make the requisite showing or has an independent statutory basis to detain him." *See Rodriguez*, 591 F.3d at 1117; *see also Clark*, 543 U.S. at 376 n.3.

*Second*, because Petitioner's detention can reasonably be expected to recur, his Petition

1  falls within the "voluntary cessation" exception to mootness. "[A] defendant claiming that its
2  voluntary compliance moots a case bears the formidable burden of showing that it is absolutely
3  clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the*
4  *Earth*, 528 U.S. at 190. In this case, the Government has not met its burden. In support of its
5  argument that Petitioner is not likely to be re-detained, except under limited circumstances outside
6  ICE's control, the Government provides the following declaration from Joel Mata, the Assistant
7  Field Director with Enforcement and Removal Operations:

> In my experience, once an alien is released, and provided the alien complies with the terms of release, the alien will be re-detained only in rare cases. I have spoken with ICE officials here, including the Acting Field Office Director, and I have been authorized to represent that ICE will not re-detain Mr. Centeno-Ortiz unless: (1) he violates the terms of his release, including but not limited to refusing to report as required or engaging in criminal conduct; (2) a final order of removal is issued against him; or (3) ICE is required by law to re-detain him.

12  (Mata Decl. ¶ 11 (Gov't Return, Ex. A) [Doc. No. 10-2].) This declaration is insufficient to show
13  that it is "absolutely clear" that Petitioner would not be re-detained. *See Friends of the Earth*, 528
14  U.S. at 190. Rather, the declaration expressly states that the Government reserves the ability to re-
15  detain Petitioner if "ICE is required by law to re-detain him." *Id.* As Petitioner persuasively
16  argues, because the Government refuses to disclaim its authority to detain Petitioner without a
17  bond hearing as an "arriving alien," (*see, e.g.*, Gov't Return, at 4 n.2), this exception in effect
18  swallows up the Government's stated intent not to re-detain.
19        Notably, the ability of the Government to decide—in its discretion—whether Petitioner is
20  "required by law" to be re-detained distinguishes this case from *Pircin-Peron v. Rison*, 930 F.2d
21  773 (9th Cir. 1991), on which the Government relies. In *Pircin-Peron*, the Ninth Circuit concluded
22  that a declaration of the director of the Los Angeles District Office of the INS that the petitioner
23  would remain on parole barring petitioner's "reinvolvement with the criminal justice system, a
24  change in the Cuban government enabling him to return to Cuba, or the willingness of a third
25  country to accept him" provided sufficient assurance against re-detention. *Id.* at 776. The Ninth
26  Circuit in *Pircin-Peron* found no reasonable chance of re-detention because the specified
27  conditions for re-detention were all outside of ICE's control. Because that is not the case here,
28  *Pircin-Peron* is inapposite. *See Franco-Gonzalez v. Holder*, No. 10cv2211–DMG (DTB), Doc.

1 No. 54, at *10 (C.D. Cal. Oct. 18, 2010) (analyzing a similar exception to ICE's intent not to re-
2 detain and concluding that the case was not moot, because "[w]hereas the government retained no
3 discretion in *Pircin-Peron* absent conduct by others out of its control, Respondents in this case
4 provide for an exception that swallows their stated intent not to re-detain"); *see also Diouf v.*
5 *Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) (distinguishing *Pircin-Peron* and concluding
6 that the "voluntary cessation" applied where "the government could redetain Diouf, and deny him
7 a bond hearing, at any time"). *But see Sanchez de Gomez v. Baker*, No. 10cv652–JM (JMA), Doc.
8 No. 20 (S.D. Cal. July 29, 2010) (relying on *Pircin-Peron* in dismissing the petition as moot where
9 the petitioner was released pursuant to 8 U.S.C. § 1226(a) and where the government represented
10 that petitioner will not be re-detained unless he "(1) violates the terms of his release, including but
11 not limited to refusing to report as required or engaging in criminal conduct, or (2) a final order of
12 removal issued against him, or (3) ICE is required by law to re-detain him").[1]

13 Finally, the Court rejects the Government's suggestion that *Sze v. INS*, where the Ninth
14 Circuit suggested that for the "voluntary cessation" exception to apply, "the INS's voluntary
15 cessation 'must have arisen *because of* the litigation,'" applies in this case. *See* 153 F.3d 1005,
16 1008 (9th Cir. 1998) (citation omitted). Rather, as the district court in *Franco-Gonzalez* observed
17 in addressing a similar situation, the Court "does not find it purely coincidental that, after
18 detaining Petitioner for nearly [three] years, the government released him [one month] after he
19 filed the Petition." *See* No. 10cv2211–DMG (DTB), Doc. No. 54, at *9 n.3.

20 Accordingly, the Court **DENIES** the Government's request to dismiss the Petition as moot.

21 **II.     Merits**

22 The Court next turns to the substantive claim of the Petition—whether the Government can
23 detain an individual it classifies as an "arriving alien" indefinitely without a bond hearing. To
24 answer that question, the Court must first determine what statutory authority authorizes
25 Petitioner's detention. The Court must then determine whether the recent Supreme Court and
26 Ninth Circuit case law on indefinite detention can be extended to someone in Petitioner's position.

27

28     [1] The Ninth Circuit heard oral argument in the appeal from the *Sanchez de Gomez* decision on October 12, 2011. *See Sanchez de Gomez v. Baker*, Case No. 10-56542 (9th Cir.).

### A. Statutory authority for detention

Prior to being released on parole, it appears that Petitioner was being held pursuant to 8 U.S.C. § 1225(b)(2)(A), which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." The term "applicant for admission" refers to anyone making an application for admission into the United States. 8 U.S.C. § 1101(a)(4); *see also* 8 C.F.R. § 1001.1(q) ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").

In this case, because Petitioner was apprehended when he tried to gain admission into the United States, he is properly classified as an "applicant for admission" or an "arriving alien." Moreover, because Petitioner had been previously removed, he was properly detained when he attempted to gain admission because the examining immigration officer could not determine that he was "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A).

### B. Applicable case law

In a series of decisions, the Supreme Court and the Ninth Circuit have "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010). "Each decision has undertaken interpretation of the immigration detention statutes against the backdrop of the serious constitutional issues raised by indefinite or prolonged detention." *Id.* The Court will review these decisions to provide the relevant context in determining the pertinent question in this case: whether the Government can indefinitely detain *this* Petitioner without providing a bond hearing.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court first took up the question of

whether an immigration discretionary detention statute authorized indefinite or prolonged detention. The alien there was detained pursuant to 8 U.S.C. § 1231(a)(6), authorizing discretionary detention of aliens after the removal period. The Supreme Court held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. The Court found § 1231(a)(6) ambiguous as to whether it authorized indefinite detention and, therefore, "interpreting the statute to avoid a serious constitutional threat, . . . conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court determined that for six months following the beginning of the removal period an alien's detention was presumptively authorized. *Id.* at 701. However, after that period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" in order to continue to detain the alien. *Id.*

The Ninth Circuit extended the *Zadvydas* framework to discretionary detention pursuant to Sections 1225(b) and 1226(a), finding that indefinite detention under these statutes poses the same constitutional concerns present in *Zadvydas*. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (9th Cir. 2008) (concluding that where the alien filed a petition for review of his administratively final order of removal and the Ninth Circuit entered a stay, the alien's detention was governed by 8 U.S.C. § 1226(a), and extending *Zadvydas* to cover such a situation); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078-80 (9th Cir. 2006) (concluding that the general immigration detention statutes, 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A), do not authorize indefinite detention, but rather permit only detention for a reasonable period set forth in *Zadvydas*).

Having applied the *Zadvydas* framework to determine when prolonged discretionary detention is authorized, the Ninth Circuit began to determine what sort of bond hearing, if any, is needed to justify such prolonged discretionary detention. In *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942, 949-52 (9th Cir. 2008), the Ninth Circuit determined that § 1226(a) provided authority for the Attorney General to release an alien detained under that section on bond following a bond hearing. "Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally

doubtful,'" the Ninth Circuit concluded "that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing." *Id.* (citation omitted); *see also Prieto-Romero*, 534 F.3d at 1065-66 (finding that three bond hearings for an alien detained under § 1226(a) satisfied due process); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding that an alien detained for nearly three years could not be mandatorily detained under § 1226(c) and ordering a bond hearing, impliedly finding that the alien was detained under § 1226(a)).

Most recently, in *Diouf v. Mukasey* (*Diouf II*), 634 F.3d 1081, 1084 (9th Cir. 2011), the Ninth Circuit concluded that an alien detained under § 1231(a)(6) was entitled to the same procedural safeguards against prolonged detention as one detained under § 1226(a). The Ninth Circuit rejected the government's argument that the "important interest" at stake—freedom from prolonged detention—was less for aliens detained while seeking *collateral* judicial review of administratively final orders of removal as compared to those seeking *direct* review. *Id.* at 1087. The Ninth Circuit also emphasized that while the government's interest in "ensuring that aliens are available for removal if their legal challenges do not succeed" may be "marginally greater" with respect to aliens detained under § 1231(a)(6) than those detained under § 1226(a), the proper place to consider this interest was by the immigration judge at the bond hearing, rather than by "categorically denying to § 1231(a)(6) detainees the right to a bond hearing that § 1226(a) detainees already enjoy." *Id.* at 1087-88. The Ninth Circuit rejected the government's argument that § 1231(a)(6) warranted a different analysis because, unlike § 1226(a), it did not "*expressly* authorize release on bond." *Id.* at 1089. Finally, the Ninth Circuit disagreed with the government that the DHS regulations providing for one or more "post-order custody reviews" ("POCRs") by DHS employees sufficiently safeguarded the liberty interests of § 1231(a)(6) detainees. *Id.* at 1089. The Ninth Circuit held that it would not defer to DHS regulations interpreting § 1231(a)(6) where those regulations "raise grave constitutional concerns." *Id.* at 1090.

C.  Analysis

Applying *Casas-Castrillon* and *Diouf II*, the Court concludes that the same constitutional concerns that underpin prolonged detention under Sections 1226(a) and 1231(a)(6) are also present in a prolonged detention under Section 1225(b)(2)(A). Indeed, the Ninth Circuit's reasoning in

*Diouf II* makes it clear that, irrespective of the statutory authority used to detain an alien, once the presumptively reasonable detention period expires, the government must justify any further detention by meeting its burden before a neutral decisionmaker.

None of the Government's suggested reasons warrant a different conclusion. In fact, most of them were rejected in *Diouf II*. Just as the Ninth Circuit concluded in *Diouf II*, while the Government might have a "marginally greater" interest in detaining § 1225(b)(2)(A) detainees than § 1226(a) detainees, its overriding interest of "ensuring that aliens are available for removal if their legal challenges do not succeed" is the same irrespective of whether they are detained under § 1226(a), § 1231(a)(6), or § 1225(b)(2)(A). *See Diouf II*, 634 F.3d at 1087-88. In each case, however, that interest "is served *by the bond hearing process itself*." *Id.* at 1088 (emphasis added). If the alien poses a flight risk, or is a danger to the community, then detention is permitted. *See id.*

On the other hand, arriving aliens detained under § 1225(b)(2)(A) have the same "important interest" at stake as the aliens detained under § 1226(a) and § 1231(a)(6)—"freedom from prolonged detention." *See id.* at 1087. In all three situations, "it may take years for the petitions for review to be resolved." *Id.* at 1088. Petitioner's case is a good example: he has already spent three years in DHS custody, during which time the IJ twice rejected his application for asylum and withholding of removal under CAT, and the BIA twice affirmed, only to reopen the removal proceedings afterwards. Petitioner twice petitioned the Ninth Circuit for review of the BIA's decision, only for the Ninth Circuit to dismiss both petition for lack of a final agency determination. As it stands now, Petitioner is back in front of the IJ as a result of the BIA's decision to reopen his 1999 removal proceedings, with no discernible end in sight. During this whole time, and until he was recently released on discretionary parole, Petitioner remained in DHS custody. This prolonged detention "raises substantially the same due process concerns" as in *Casas-Castrillon* and *Diouf II*. *See Diouf II*, 634 F.3d at 1088.

Nonetheless, the Government suggests the Court should defer to DHS regulations, which specifically withhold a bond hearing from "arriving aliens." The Court declines to do so. Under 8 C.F.R. § 1003.19(h)(2)(i), an IJ does not have jurisdiction to re-determine the custody decisions affecting "[a]rriving aliens in removal proceedings." As the Ninth Circuit emphasized in *Diouf II*,

however, the Court "may not defer to DHS regulations . . . if they raise grave constitutional doubts." 634 F.3d at 1090. In *Nadarajah*, the Ninth Circuit already concluded that indefinite detention under the statutory authority at issue here would be constitutionally suspect. *See* 443 F.3d at 1076 (analyzing detention under 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A)). Thus, to the extent 8 C.F.R. § 1003.19(h)(2)(i) permits indefinite detention of arriving aliens without a bond hearing, the Court need not defer to those regulations.[2] *See Diouf II*, 634 F.3d at 1090.

None of the above is meant to suggest that the alien's status or the stage of the proceedings is not relevant to an IJ's assessment of whether detention is necessary to ensure a specific alien's availability for removal. *See Diouf II*, 634 F.3d at 1088. Arguably, there is more concern that an arriving alien will abscond than one who has been continuously present in this country for a long period of time. Likewise, circumstances may arise justifying revocation of release that at one time was properly granted. *See id.* Nonetheless, "although these factors are important enough for an immigration judge to consider at bond hearings, they do not warrant *categorically denying* to [§ 1225(b)(2)(A)] detainees the right to a bond hearing that § 1226(a) [and § 1231(a)(6)] detainees already enjoy." *See Diouf II*, 634 F.3d at 1088 (emphasis added).

For the foregoing reasons, to paraphrase *Diouf II*, the Court can "find no basis for withholding from aliens detained under [§ 1225(b)(2)(A)] the same procedural safeguards accorded to aliens detained under § 1226(a) [and § 1231(a)(6)]." *See* 634 F.3d at 1086. As was

---

[2] Any argument that arriving aliens may be detained indefinitely under § 1225(b)(2)(A) because DHS regulations provide a meaningful alternative in the form of POCRs fails for the same reasons it did in *Diouf II*. There, the Ninth Circuit concluded that provision of one or more POCRs by DHS employees did not provide a sufficient safeguard to protect the liberty interests of § 1231(a)(6) detainees and, therefore, could not substitute for "an independent determination of the need for continued detention by a neutral decisionmaker such as an immigration judge." *Diouf II*, 634 F.3d at 1089. Just as in *Diouf II*, the application of the POCR regulations to Petitioner could result in prolonged custody longer than 180 days, which raises "grave constitutional doubts." *See id.* at 1090. As the Ninth Circuit concluded, beyond the six-month period, the POCR regulations are "not alone sufficient to address the serious constitutional concerns raised by continued detention." *See id.* at 1091 ("The regulations do not afford adequate procedural safeguards because they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge."); *Casas-Castrillon*, 535 F.3d at 951-52 (holding that the POCR "falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA"); *see also Zadvydas*, 533 U.S. at 692 (holding that indefinite detention under § 1231(a)(6) raised serious constitutional concerns, in part because "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous").

the case in *Casas–Castrillon* and *Diouf II*, prolonged detention under § 1225(b)(2)(A), without adequate procedural protections, would raise "serious constitutional concerns." *See Diouf II*, 634 F.3d at 1086; *Casas–Castrillon*, 535 F.3d at 950; *see also Nadarajah*, 443 F.3d at 1078 (analyzing 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A) and concluding that those general immigration detention statutes "do not authorize the Attorney General to incarcerate detainees for an indefinite period"). To address those concerns, the Court will "apply the canon of constitutional avoidance" and construe § 1225(b)(2)(A) "as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision." *See Diouf II*, 634 F.3d at 1086; *see also Casas-Castrillon*, 535 F.3d at 951. Such aliens are entitled to release on bond unless the Government establishes that the alien is a flight risk or will be a danger to the community.[3] *See Diouf II*, 634 F.3d at 1086; *Casas-Castrillon*, 535 F.3d at 951.

///
///
///
///
///
///
///

---

[3] In a footnote, the Government cites to a recent decision in *Abdi v. Napolitano*, No. C10-1722RSL, 2011 WL 1584433 (W.D. Wash. Apr. 26, 2011), where a district court concluded that an arriving alien detained under § 1225(b)(1)(B)(ii) and (b)(2) was not entitled to a bond hearing. That decision, however, appears to give insufficient weight to *Diouf II* and *Nadarajah*. First, although the Ninth Circuit in *Diouf II* did not address the precise issue in these cases, it did note that it could not defer to the DHS regulations governing review of prolonged detentions, where those regulations "raise grave constitutional doubts." 634 F.3d at 1090. As such, the district court's decision in *Abdi* to defer to the DHS regulations which provide that an "arriving alien" is not entitled to a bond hearing before an IJ, *see* 8 C.F.R. § 1003.19(h)(2)(i), is questionable. *See* 2011 WL 1584433, at *2. Similarly, in *Nadarajah*, the Ninth Circuit held that § 1225(b)(1)(B)(ii) and (b)(2)(A) did not authorize indefinite detention. 443 F.3d at 1076-78. The district court in *Abdi* merely acknowledges this holding. *See* 2011 WL 1584433, at *3 & n.5. Finally, while noting that "the Supreme Court, construing 8 U.S.C. § 1226(c), has found that mandatory detention without a bail hearing during removal proceedings . . . is 'a constitutionally permissible part' of the removal process," 2011 WL 1584433, at *3 (quoting *Demore v. Kim*, 538 U.S. 510, 527-31 (2003)), the district court in *Abdi* fails to discuss the Ninth Circuit's later conclusion that this holding did not permit indefinite detention. *See Tijani*, 430 F.3d at 1242 (finding that an alien detained for nearly three years could not be mandatorily detained under § 1226(c) and ordering a bond hearing, impliedly finding that the alien was detained under § 1226(a)).

**CONCLUSION**

Accordingly, the Court **DENIES** the Government's request to dismiss the Petition as moot. Moreover, the Court **CONDITIONALLY GRANTS** the Petition. If Petitioner's current parole is revoked and he is taken back into DHS custody as an "arriving alien" subject to mandatory detention, and provided the Government does not have some other independent statutory basis to detain him, the Government shall provide Petitioner with an individualized bond hearing before an immigration judge, where the Government will have the burden of establishing that Petitioner should not be released because he is either a flight risk or will be a danger to the community.

**IT IS SO ORDERED.**

**Date: January 19, 2012**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**